UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


       -against-                           S1 05 Crim. 0888 (LAK)


JEFFREY STEIN, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM AND ORDER**


LEWIS A. KAPLAN, *District Judge.*

          The government moves for a severance of defendant Greenberg from defendants Larson, Makov, Pfaff and Ruble and proposes to try defendant Greenberg first.  These five defendants move for a continuance of the trial, which recently was postponed from September 17, 2007 until October 16, 2007.  They claim that they cannot be ready to try the case in mid-October because (1) the government may reconfigure its case,  (2) the July 16 dismissal of thirteen defendants from the case disrupted defense preparations and deprived these five defendants of resources that would have been devoted to the matter by the other thirteen, (3) the government has not yet completed the electronic database that it belatedly offered to the defendants, and (4) the government has produced about 2 million more pages of documents since November 2006 on top of the roughly 22 million pages produced prior to that time.

*Severance*

The government motion for a severance – which is opposed by four of the five remaining defendants – comes against an interesting background.  The government of course chose to indict these defendants, and the thirteen others as to whom the indictment recently was dismissed, together.  The indictment charges, among other things, a single overarching conspiracy.  The government steadfastly and successfully resisted efforts by defendants to obtain separate trials.  In time, however, its position changed.

Although their initial motions for severance were denied, the defendants renewed those efforts in 2006.  In response to the new motions, the government again opposed any severance.  At oral argument, however, its new lead prosecutor shifted ground, saying that he did not believe that "a single trial of 18 defendants . . . is the best way to try the case."[1]  The government then indicated that if the Court were inclined to grant defendants' motions, it would prefer to divide the eighteen defendants into two groups for trial.  In doing so, it argued against a separate trial of defendants Larson, Makov, Pfaff and Ruble – precisely the group it now proposes to try separately – on the ground that Messrs. "Larson, Pfaff and Ruble were intimately involved in virtually the entire gamut of the fraudulent activity alleged in the indictment."[2]

The Court denied any severance.  Now the government seeks another bite at the apple, this time asking for the separate trial of Larson, Makov, Pfaff and Ruble that it opposed some months ago.

The government's application is not justified on grounds of economy or efficiency.

---

[1]      *See* dkt. item 918, at 1.

[2]      Dkt. item 1153, at 3; dkt. item 918.

3

While it claims that its case-in-chief in a Greenberg-only trial would take only three weeks, it acknowledges that removing Mr. Greenberg from the trial of the other defendants would reduce the length of that trial, as compared with a combined trial, by roughly the same amount.[3]  Even if it is correct, there would be little or no overall time saving in the government's cases-in-chief, and the amount of time devoted to jury selection, openings, summations, and doubtlessly lengthy jury instructions would be increased materially.  Nor has the government attempted to demonstrate that it would be prejudiced by trying these five defendants together.  The only basis for the request that occurs to the Court is an effort to gain some unspecified tactical advantage.  But this is not sufficient.

As the Supreme Court has explained, the interests of efficiency and consistency of outcome generally favor joint trials of defendants indicted together.[4]  "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[5]  To be sure, the applicant here is the government, not a defendant.  But the government "is in a very poor position to request separate trials" because it was "in the controlling position" to determine how the case initially was charged.[6]  Certainly in the absence of a specific showing of prejudice to the government, and perhaps even then, the government is not entitled to a severance.  The government has made no such showing here.

---

[3]  Bauer Decl. (dkt. item 1163) Ex. B.

[4]  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

[5]  *Id.* at 539.

[6]  *United States v. Cappello*, 209 F. Supp. 959, 960 (E.D.N.Y. 1962).

*Continuance*

In addressing defendants' application, it is important to begin by setting out the facts relating to the setting of the case for trial.

All of the moving defendants save Messrs. Makov and Greenberg were indicted in August 2005, nearly two years ago.  On September 6, 2005, the case was set for trial on May 1, 2006. Following the return of the superseding indictment on October 17, 2005 (when Messrs. Makov and Greenberg were added as defendants), the case was set for trial on September 11, 2006.  After the decision in *Stein I*,[7] that date was continued until January 15, 2007, principally in an effort to enable resolution of the attorneys' fee advancement issue and to provide more time in light of the discovery problems that had occurred.

In September 2006, the Court of Appeals stayed the ancillary proceeding in which the KPMG Defendants sought a determination that KPMG was obliged to advance defense costs to many of the defendants. In light of the uncertainty as to KPMG's obligations with respect to attorneys' fees and the government's then recent production of 7 million documents, defendants in November 2006 sought a delay of the trial until April 2007.[8]  On November 14, 2006, the Court postponed the trial *sine die* pending a conference with counsel, but on December 21, 2006 set the trial for September 17, 2007.[9]  These defendants therefore have been on notice for more than eight months that the case could be tried as early as September 17.

Against that background, the Court turns to defendants' arguments.

---

[7] *United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006).

[8] Dkt. item 821.

[9] Dkt. items 824, 846.

5

*Possible Reconfiguration of the Government's Case*

The defendants' argument for a continuance rests heavily on the suggestion that the government might reconfigure its case. But that argument, which was not strong to begin with, does not survive the denial of the government's motion for a severance.

The initial hint that there might be some change was a letter from the government to counsel that spoke vaguely of unspecified efforts "to streamline the case in the wake of the Court's order dismissing certain defendants."[10] This was followed by the letter from the government to the Court in which the government sought separate trials with respect to Mr. Greenberg, on the one hand, and the other four defendants, on the other.[11] Were such a severance granted, it said, it would offer in the Greenberg trial only 250 of the approximately 2,000 exhibits on its exhibit list and call only 10 to 12 of the roughly 70 individuals on its witness list.[12] The evidence offered against Mr. Greenberg, for the most part, in turn would not be offered against the other four remaining defendants, Messrs. Larson, Makov, Pfaff and Ruble.

The Court's denial of the government's application for separate trials cuts the ground from under this argument because the government has not suggested any intention of altering the case that defendants long have been preparing to meet except in the event of a severance. And even if the Court were inclined to grant separate trials as sought by the government, it would not change this conclusion. The government suggested that it would streamline and shorten the case presented in each of the two proposed trials, not complicate or prolong it. Both Mr. Greenberg and the Larson

---

[10] Bauer Decl. (dkt. item 1163) Ex. A.

[11] *Id.* Ex. B.

[12] *Id.*

group would have faced less, not more, evidence than they would have faced had the case gone forward against all eighteen defendants.  That is not a basis for a postponement.

*Alleged Disruption of the Defense by the Dismissals*

The Court assumes that, prior to the recent dismissal, the eighteen defendants worked together to the extent their interests were consistent.  The dismissal of thirteen of them may have some effect on those that remain.  But this is insufficient to carry the day, either alone or in combination with other considerations.

To begin with, the eighteen defendants were not entirely aligned in interest.  Some were involved in designing the shelters while others were involved principally or only in marketing. The potential for conflict between these groups, with marketers claiming reliance on the designers' design of the products and the designers claiming flawed execution by the marketers, was present. Mr. Ruble was with Brown & Wood, a law firm, and rendered legal opinions, which put him in a different position.  Messrs. Larson, Pfaff and Makov were involved principally in promoting the shelters through Presidio.  In addition, not all eighteen defendants were involved with each of the four tax shelters at issue in this case.  Mr. Greenberg, for example, according to the government, was personally and directly involved in marketing and implementing only one of them.  *Id.*  It therefore is readily apparent that the degree to which each defendant could have relied upon the efforts of others to protect his or her interests was considerably less than total.  Moreover, the ability of any defendant to do that in the context of a trial, as opposed to such often commonly applicable pretrial activities as motion practice, is limited.  After all, the guilt or innocence of any individual defendant depends in no small part on that defendant's personal activities, knowledge and intent – issues on which reliance on counsel for other defendants ordinarily would be undesirable.

Second, while the moving defendants claim that counsel for all eighteen defendants divided responsibility for unspecified "investigation and research" and that they no longer can rely upon the KPMG Defendants with respect to matters relating to internal debates at KPMG concerning the tax shelters,[13] the former claim is little more than a generality and the latter of questionable significance at this late date.  On July 15, 2007, the day before the case was dismissed as to thirteen defendants, all defendants were facing the possibility of a joint trial commencing on September 17.  They have had the government's witness and exhibit lists for over a year.  They have had the Jencks material on the government's witnesses for many months.  They should have been and, for all defendants' papers show, actually were substantially ready for trial on all issues when the dismissal order was entered.

Finally, and most importantly, no defendant in a multi-defendant case ever can be sure that all defendants will go to trial, even where all defendants are cooperating extensively.  The possibility of guilty pleas is omnipresent.  Moreover, Messrs. Ruble and Makov knew from the outset that the KPMG Defendants might be dismissed and that they would be left to face the charges because neither of them ever worked at KPMG and neither therefore had any colorable claim that the government's pressure on KPMG violated their constitutional rights.  And while Messrs. Greenberg, Larson, and Pfaff each at one point worked for KPMG, all long have known that it was at least possible that the circumstances that led to the dismissal of the case as to the thirteen would not result in dismissal as to them.[14]  These defendants therefore were unjustified in assuming that they would not have to stand trial in the absence of the other thirteen defendants, if indeed they ever so assumed.

---

[13]     Def. Mem. (dkt. item 1162) 4.

[14]     *See United States v. Stein*, 2007 WL 2050921, at *25-26  (S.D.N.Y. July 16, 2007).

8

To be sure, these defendants may wish to make adjustments in light of the dismissal of the thirteen other defendants.  By the time opening statements begin on October 16, however, they will have had a full three months following the date of the dismissal order in which to make them. That is more than sufficient.

*The Electronic Database*

On March 29, 2007, the government proposed the creation, at government expense, of a searchable electronic database  for use by defendants containing information with respect to all documents produced in electronic form in this case.  The most recent estimate was that this project would be completed and available for use later this month.

While the government's database will be of some help to the defendants, the fact that it first will become available later this month does not justify a postponement.

As an initial matter, the defendants have had 22 million of the 24 million documents for at least nine months already, many of them electronically searchable, albeit only with greater effort than would be necessary if the government's product lives up to expectations.  In November 2006, by which time they already had 22 million of the documents and no promise of an electronic database, they sought a postponement only until April 2007.  Thus, defendants previously indicated that they would have been ready for trial long ago without the database.

Second, the government's database will not be a panacea for the problem of dealing with the huge volume of documents in this case for reasons alluded to both above and elsewhere.[15] Moreover, it will not include the hundreds of boxes of documents produced in tangible rather than

---

[15]  *See id.* at *19.

electronic form.

Finally, with trial set to begin on October 16, the defense will have had six weeks prior to opening statements in which to use the database. In addition, one cannot properly ignore the fact that the database will be available throughout a trial of several months' duration. It is quite likely that the defendants will have at least five months in which to use it before they begin any defense cases.

*Continuing Document Production*

Defendants' final point is that the government has continued to produce documents even recently and that further document production may occur. It is important to understand why this is so and to place it in context.

While there were some exceptions early on, the government's document production over the past nine months or more has been attributable chiefly to its having obtained documents not previously in its possession as a result of parallel investigations of tax shelters rather than to the belated discovery of documents that it had all along. Those investigations apparently continue, and the Court is unaware of any anticipated completion date. In consequence, the government may continue to obtain additional documents and, to the extent those documents are producible in this case, turn them over to the defense.

The fact that the defendants may continue to receive documents from the government until right before and even during trial has been known to defendants for a long time. Indeed, it was known to them in November 2006 when they sought a postponement of the trial until April 2007. Thus, defendants have acknowledged that they are capable of beginning the trial even with this possibility outstanding. The reasons that is so, regardless of defendants' tacit acknowledgment, are

plain.

First, the vast bulk of the documents made available to defendants (22 million of 24 million pages) were turned over prior to November 2006.  The continuing production has slowed dramatically.  Moreover, in light of the fact that most of the recently produced documents have related to the activities of other entities under investigation, the significance of this recent production for this case appears to be limited.  Certainly defendants have not established the contrary.

Even more important, the defendants have received extensive and, at least in this district, very unusual access to the government's intended proof and related materials long before trial.  They were given the government's witness and exhibit lists in July 2006, more than a year ago,[16] and the government will not be permitted to add additional evidence absent very compelling reasons.[17]  Even more unusual, the government produced *Jencks* material to defendants in November 2006.[18]  Whatever disadvantage they may suffer from belated production of documents of perhaps marginal importance is more than offset by the unusual and substantial advantages they have gained.  Moreover, the Court retains the ability to make any necessary adjustments in the event something of substantial significance belatedly comes to light.

*Conclusion*

The government's application for a severance is denied.

---

[16]

*See United States v. Stein*, 424 F. Supp. 2d 720, 725 (S.D.N.Y. 2006); Tr., July 13, 2006, 65-133 (discussing defendants' then recent receipt of government's witness list and exhibits).

[17]

*See* Tr., July 13, 2006, 123:24-128:19.

[18]

*See* Order, Aug. 2, 2006 (dkt. item 672).

As far as the defendants' motion is concerned,  the Court understands that, from defendants' perspective, there probably never will be a perfect time at which to try this case.  But defendants are entitled only "to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).  Having considered all of the circumstances in light of the Court's experience with this case for nearly two years, the Court has concluded that the proper balance between the public interest in getting on with this matter and the defendants' rights would be struck best by proceeding as scheduled.  The motions for a continuance (dkt. items 1162, 1167) are denied.

The parties are reminded that all applications for relief are to be made by motion and that all motions and papers in support of and in opposition to them must be filed electronically.  It would be most helpful if the parties restricted the writing of letters to the Court, which may not be filed electronically, to purely administrative matters.

SO ORDERED.

Dated:        August 3, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)